Patricia STAIGER, Plaintiff/Appellee,

v.

James GAARDER and Ray M. Sigl, as Special Administrator of the Estate of James F. Sigl, Deceased, Defendants/Appellants.

Civ. No. 9360.

Supreme Court of North Dakota.

Oct. 11, 1977.

Rehearing Denied Oct. 26, 1977.

Zuger & Bucklin, Bismarck, for the Estate of James F. Sigl, defendant and appellant; argued by William P. Zuger, Bismarck.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz and Wheeler, Wolf, Wefald & Peterson, Bismarck, for James Gaarder, defendant and appellant; argued by A. William Lucas, Bismarck.

Freed, Dynes, Malloy & Reichert, Dickinson, for Patricia Staiger, plaintiff and ap-

pellee; argued by George T. Dynes, Dickinson.

PAULSON, Justice.

This is an appeal by the defendant, Ray M. Sigl, as Special Administrator of the Estate of James F. Sigl [hereinafter Sigl], and by the defendant, James Gaarder [hereinafter Gaarder], from the judgment of the Morton County District Court entered on February 7, 1977. Gaarder also appeals from the order of the Morton County District Court entered on March 17, 1977, denying Gaarder's motion for a judgment notwithstanding the verdict or in the alternative for a new trial. Sigl is represented by different counsel on appeal than represented him at trial.

On July 21, 1974, a collision occurred between a car driven by defendant Gaarder and another car driven by James F. Sigl. James F. Sigl was killed in the collision and his estate is named as one of the co-defendants in this lawsuit. The plaintiff, Patricia Staiger [hereinafter Staiger], was a passenger in the Gaarder car. Staiger brought this lawsuit against Gaarder and Sigl, alleging that she incurred severe bodily injuries as a result of the collision.

On January 27, 1977, the jury returned a verdict wherein it found, under North Dakota's Comparative Negligence Law (§ 9-10-07, N.D.C.C.), that Staiger was 10% negligent, Sigl was 30% negligent, and Gaarder was 60% negligent. The jury further found that Staiger should be awarded the total sum of $71,339.50 plus 4% interest thereon. On February 7, 1977, judgment was entered awarding to Staiger, against Sigl and Gaarder jointly and severally, the net amount of $64,205.55 (i. e., $71,339.50 less $7,133.95, reflecting the jury determination that Staiger was 10% negligent) plus 4% interest per annum on the judgment from July 21, 1974, to the date of the entry of the judgment.

Subsequent to the entry of judgment both Gaarder and Sigl made motions for judgment notwithstanding the verdict and in the alternative for a new trial. The motions were denied by the trial court on March 17, 1977. Gaarder and Sigl have brought timely appeals to this court asserting there were several prejudicial errors committed by the district court at the trial and further asserting that the jury verdict was excessive. They request this court to reverse the judgment and to grant a new trial.

At the outset we are confronted with Staiger's assertion that Sigl's appeal should be dismissed on the ground that the issues raised by Sigl on this appeal were also raised on Sigl's motion for judgment notwithstanding the verdict or in the alternative for a new trial and that Sigl failed to appeal from the order denying said motion. Staiger asserts that issues raised on a motion for judgment notwithstanding the verdict or a motion for a new trial cannot be raised on an appeal from the judgment itself but are reviewable only on an appeal from the order denying said motions. We disagree with that assertion.

Staiger's assertion is based upon decisions of this court involving certain appellate rules which are no longer applicable. Prior to March 1, 1973, an appeal in a civil action could be taken from a judgment by serving and filing a notice of appeal within six months after written notice of the entry of judgment and from an order within sixty days after written notice of entry of the order. *Jager v. Grommesh,* 77 N.W.2d 873, 874 (N.D.1956). Pursuant to Rule 4 of the North Dakota Rules of Appellate Procedure [effective March 1, 1973], an appeal from either a judgment or an order can be taken by filing notice with the clerk of the trial court within sixty days of the date of service of notice of entry of the judgment or order to be appealed. Also, pursuant to Rule 4, N.D.R.App.P., the running of the time for filing a notice of appeal is terminated by the timely filing of a motion for judgment notwithstanding the verdict or of a motion for a new trial, and the full time for appeal commences to run from the service of notice of the entry of an order denying said motions.

The decisions relied upon by Staiger were decided under the prior appellate rules wherein the time within which one could appeal from a court order expired prior to the time within which one could appeal from the judgment itself. Those decisions stand for the proposition that if a court order denying a motion for a new trial or a judgment notwithstanding the verdict has become final and the time within which an appeal could be taken from said order has expired, then the issues presented on the motion cannot be reviewed on a subsequent appeal from the judgment itself. *Fladeland v. Nomeland,* 95 N.W.2d 513 (N.D. 1959); *Jager v. Grommesh,* 77 N.W.2d 873 (N.D.1956); *Goodman v. Mevorah,* 79 N.D. 653, 59 N.W.2d 192 (1953).

Under the current rules of appellate procedure, the time period within which one can appeal from a judgment expires at the same time as the time period within which one can appeal from an order denying a motion for judgment notwithstanding the verdict or for a new trial. Therefore, when Sigl brought this timely appeal from the judgment itself the time period had not expired within which Sigl could have appealed from the order denying his motion for judgment notwithstanding the verdict or for a new trial. Consequently, the issues raised on the motion for judgment notwithstanding the verdict or for a new trial did not become final, and said issues are reviewable on this appeal from the judgment itself. We hold, therefore, under the current rules of appellate procedure, that the issues properly presented on a motion for a judgment notwithstanding the verdict or for a new trial are reviewable when raised on a timely appeal from the judgment itself. Accordingly, the issues presented on Sigl's timely appeal from the judgment are properly before this court and cannot be dismissed on the grounds asserted by Staiger.

■ We will first consider Gaarder's appeal from the order denying his motion for judgment notwithstanding the verdict. On a motion for judgment notwithstanding the verdict, the evidence must be viewed in the light most favorable to the party in whose favor the verdict was rendered, and such motion should not be granted unless the evidence shows the moving party is entitled to judgment on the merits as a matter of law. *Lovas v. St. Paul Ins. Companies,* 240 N.W.2d 53 (N.D.1976). The motion must be denied unless the court finds that the evidence, viewed most favorably to the party against whom the motion is made, compels but one conclusion as to the verdict with which no reasonable man could differ. *Nokota Feeds, Inc. v. State Bank of Lakota,* 210 N.W.2d 182 (N.D.1973).

We have carefully examined the evidence in this case, and we conclude that the evidence presented questions of fact for the jury, the determination on which reasonable men could differ. Accordingly, Gaarder was not entitled to judgment as a matter of law. Thus, the district court did not commit error in denying Gaarder's motion for judgment notwithstanding the verdict.

Gaarder and Sigl have raised the issue that the district court committed prejudicial error when it allowed them only four peremptory jury challenges each.

The applicable statutory provision is § 28-14-05 of the North Dakota Century Code, which provides:

"*Challenges—Classification—By whom—Number allowed.*—Either party may challenge the jurors, but when there are several parties on either side, they must join in a challenge before it can be made unless the court, for due cause shown, shall permit otherwise. The challenges are to individual jurors and are either peremptory or for cause. Each party is entitled to six peremptory challenges. If no peremptory challenges are taken until the panel is full, they must be taken by the parties alternately, commencing with the plaintiff; but a waiver as to the jurors then impaneled shall not constitute a waiver of the right to challenge jurors subsequently impaneled."

The ambiguity of this provision stems from the multiple uses of the term "party" within the provision, the various interpretations which can be placed upon the term

"party", and the legislature's failure to define the term "party" under § 28–14–05, N.D.C.C.

The decisions of other jurisdictions which have construed statutes allowing a specific number of peremptory challenges to each "party" are enumerated in an excellent annotation at 32 A.L.R.3d 747 (1970). The majority position is that multiple litigants, designated as co-plaintiffs or co-defendants, whose interests are essentially the same, are deemed a "party" and together receive only one set of peremptory challenges. On the other hand, multiple litigants, designated as co-plaintiffs or co-defendants, whose interests are essentially adverse or antagonistic, are each deemed a "party" and are *each* entitled to receive a separate set of peremptory challenges. *Ciurciu v. Modell's Shoppers World*, 58 N.J. 155, 275 A.2d 737 (1971); *O'Day v. Sakowitz Brothers*, 462 S.W.2d 119 (Tex.Civ.App.1970); *Nieves v. Kietlinski*, 22 Ohio St.2d 139, 258 N.E.2d 454 (Sup.Ct.Ohio 1970); *see, also,* 32 A.L.R.3d 747 (1970). There are basically two minority positions. One minority view is that multiple litigants, designated as co-plaintiffs or co-defendants, are together entitled to only one set of peremptory challenges regardless of whether their interests are essentially common or are essentially antagonistic. This position is frequently followed by courts in interpreting statutes which provide that where there are several parties on either side they must join in making a challenge. *E. g., Moran v. Jones*, 75 Ariz. 175, 253 P.2d 891 (1953). Another minority position is that multiple litigants, designated as co-plaintiffs or co-defendants, are each entitled to a separate set of peremptory jury challenges regardless of whether their interests are essentially common or are essentially antagonistic. *E. g., Mourison v. Hansen*, 128 Conn. 62, 20 A.2d 84 (1941).

■ The purpose of peremptory jury challenges in a civil action is to afford each litigant an opportunity to exclude, without showing cause, potential jurors whom the litigant believes would not be impartial in deciding the case. This objective must be balanced against the need for a manageable and feasible jury selection process whereby cases tried by jury can be expedited.

■ In criminal cases, pursuant to Rule 24(b)(1) of the North Dakota Rules of Criminal Procedure, each "side" is entitled to a specific number of peremptory jury challenges based on the type of offense charged. When there is more than one defendant, however, the trial court may allow the defendants additional peremptory jury challenges. Rule 24(b)(1), N.D.R. Crim.P., serves as a helpful guideline for construing § 28–14–05, N.D.C.C., regarding peremptory jury challenges in civil actions. Since the trial court, within its sound discretion, may allow additional peremptory jury challenges to multiple defendants in a criminal case, it is appropriate to construe § 28–14–05, N.D.C.C., to allow the trial court some discretion to allow multiple co-plaintiffs or co-defendants additional peremptory jury challenges in a civil action. We believe that the best interpretation of § 28–14–05 N.D.C.C., involves a combination of the reasoning underlying both the majority and the minority positions of other jurisdictions previously referred to in this opinion, and the rationale of Rule 24(b)(1), N.D.R.Crim.P.

■ We construe § 28–14–05, N.D.C.C., as follows: All co-plaintiffs are deemed a single "party" and are together entitled to one set of six peremptory jury challenges. Likewise, all co-defendants are deemed a single "party" and are together entitled to one set of six peremptory jury challenges. However, when there are co-plaintiffs or co-defendants who have essentially adverse or antagonistic interests, the trial court may, in its sound discretion, grant the co-plaintiffs or co-defendants additional peremptory jury challenges.

■ In the instant case, Staiger alleged separate acts of negligence against Gaarder and Sigl. Gaarder and Sigl filed separate pleadings and were represented by separate counsel. Their interests were essentially adverse or antagonistic. We hold that the district court properly exercised its discre-

tion when it allowed Gaarder and Sigl four peremptory jury challenges each. Accordingly, the district court did not commit error in this regard.

Gaarder and Sigl both have raised the issue that the district court committed error when it admitted into evidence the deposition of Dr. Ralph Kilzer pursuant to Rule 32(a)(3), (D) and (E), of the North Dakota Rules of Civil Procedure.

■ Pursuant to Rule 32(a)(3)(D), a deposition may be used at the trial if the offering party "has been unable to procure the attendance of the witness by subpoena". Staiger's counsel made no attempt to subpoena Dr. Kilzer although he conceded to the trial court that a subpoena could have been served on Dr. Kilzer. Clearly, Rule 32(a)(3)(D) offers no basis for admitting Dr. Kilzer's deposition under these facts.

■ Pursuant to Rule 32(a)(3)(E), a deposition can be used at a trial if "upon application and notice" the court finds that "such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used". Staiger's only reasons for offering the deposition under Rule 32(a)(3)(E) were that additional expenses would be involved if Dr. Kilzer were required to appear personally and that Staiger's counsel had a personal commitment with Dr. Kilzer to use the deposition only and not call Dr. Kilzer as a witness at the trial. We conclude that there were no "exceptional circumstances" under these facts upon which Dr. Kilzer's deposition could be admitted into evidence under Rule 32(a)(3)(E). Staiger's potential saving of some trial expenses and his counsel's personal commitment with Dr. Kilzer not to require his presence at the trial are not compelling reasons upon which to deny both Gaarder and Sigl the opportunity to have Dr. Kilzer testify at the trial where he would be subject to the spontaneous give-and-take of cross-examination for the jury to see and hear.

■ Federal Rule 32(a) is identical to Rule 32(a) of the North Dakota Rules of Civil Procedure. There is federal case authority for the proposition that the erroneous admission of a deposition into evidence under Rule 32(a)(3) of the Federal Rules of Civil Procedure may constitute harmless error which is not ground for reversal if the deposition testimony is merely cumulative of other properly admitted evidence or if the appellant fails to assert that prejudice resulted from the erroneous admission of the deposition. *Trade Development Bank v. Continental Insurance Co.,* 469 F.2d 35, 45 (2d Cir. 1972); *Nanda v. Ford Motor Company,* 509 F.2d 213, 224 (7th Cir. 1974). In the instant case both Gaarder and Sigl assert that the admission of Dr. Kilzer's deposition was prejudicial. Dr. Kilzer's testimony, by way of his deposition, constituted the only testimony at the trial by an expert in medical orthopedics. Dr. Kilzer's deposition testimony constituted the only evidence at the trial that Staiger suffered numbness in the groin area of the right thigh resulting from nerve injury in the lumbar spine area. Testimony of nerve injury by a medical expert is very likely to have a pronounced effect on the jury determination of damages in a case such as this. We hold that the admission of Dr. Kilzer's deposition by the district court constitutes prejudicial error and is ground for reversal of the judgment.

Gaarder has raised the issue on his motion for a new trial and again on this appeal that the trial court committed prejudicial error when it allowed witness Ray Sigl to testify to certain out-of-court statements made by Kenneth Zent. Ray Sigl, the father of the two Sigl boys who were killed in the collision, was called as a witness on behalf of defendant Sigl. Ray Sigl testified, in relevant part, as follows:

"Q. In the hospital, the night your sons died, did you have a conversation with Mr. Zent?

"A. Yes; I did.

. . . . .

"Q. . . . What did Mr. Zent say to you?

. . . . .

"THE WITNESS: The first thing he had said—he said, 'I am sorry, Mr. Sigl your boys got killed.' The very first thing he said to me.

. . . . .

"THE WITNESS: He made this remark, and he said, 'Mr. Gaarder turned around and was talking to me and took his eyes off the road for one minute.'

"Q. (Mr. Greenwood continuing) Did he say anything else?

"A. 'He was doing about 65 miles an hour.'"

The district court admitted into evidence the out-of-court statements of Zent, through the testimony of Ray Sigl, pursuant to the excited utterance hearsay exception of Rule 803(2) of the North Dakota Rules of Evidence,[1] which provides:

"RULE 803—HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL

"(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

 The burden of establishing the facts to qualify a statement as admissible under the "excited utterance" exception to the hearsay rule is on the proponent of such evidence. See Kornicki v. Calmar Steamship Corporation, 460 F.2d 1134, 1138 (3d Cir. 1972); Guest v. Bailes, 448 F.2d 433, 436 (6th Cir. 1971). The facts must demonstrate (1) that there is a startling event or condition; and (2) that the statement was the product of the declarant's stress or excitement resulting from the startling event or condition.

There are numerous factors which the court can consider in making a determination of whether a statement is admissible under Rule 803(2), N.D.R.Ev. The record in the instant case reveals the following evidence regarding this issue: (1) Staiger,

Zent, and two other persons were passengers in the Gaarder car at the time of the collision with the Sigl car; (2) Zent's statements to Ray Sigl were made at the hospital approximately one and one-half hours after the collision; and (3) at the trial Sigl introduced no evidence as to Zent's physical or emotional condition at the time the statements were made, nor was there any evidence that the statements were uttered in an excited manner. The only evidence regarding Zent's condition was elicited by Staiger's counsel during his cross-examination of Ray Sigl. Ray Sigl was asked whether Zent was injured and he responded "Not bad, because he did walk to us". Ray Sigl further stated that Zent "didn't appear to be" in shock.

 A determination that a statement is an excited utterance depends upon whether it was the product of the stress or excitement of a startling event or condition. The time lapse between the exciting event and the declaration is an important factor, although not necessarily a determinative one, as to whether the declaration was the product of stress or excitement rather than the product of reflection and possible contrivance. This court has twice upheld the admission of statements under the "res gestae" exception to the hearsay rule, which statements were made between forty minutes and one hour after the event. Dimond v. Kling, 221 N.W.2d 86, 92 (N.D.1974); Trautman v. New Rockford-Fessenden Co-op Transport Ass'n, 181 N.W.2d 754, 760 (N.D.1970). However, in Trautman, at page 760 of the opinion, this court stated that ". . . the 45-minute delay involved weighs against 'spontaneity' and 'influence of the accident . . ..'" In the instant case, the one-and-one-half-hour lapse between the collision and Zent's statements to Ray Sigl weighs against the admission of his statements under the excited utterance exception.

1. The trial proceedings of the instant case occurred in January of 1977, and the North Dakota Rules of Evidence did not become effective until February 15, 1977. Nevertheless, this court, in Starr v. Morsette, 236 N.W.2d 183, 187 (N.D.1975), impliedly adopted what is now Rule 803(2), N.D.R.Ev., as a controlling rule of evidence.

The paucity of testimony in this record regarding Zent's emotional and physical condition certainly weighs against admission of Zent's statements under the excited utterance exception. The record does reveal that Zent was a passenger in Gaarder's car. Thus, Zent was personally involved in and exposed to this tragic collision which resulted in two deaths, severe injuries to other persons, and the complete destruction by fire of the Gaarder car in which Zent had been a passenger. Such facts certainly demonstrate the occurrence of a "startling event". Nevertheless, these facts alone constitute an insufficient foundation regarding the emotional and physical condition of Zent one and one-half hours after the event.

 We conclude, as a matter of law, that Sigl failed to introduce sufficient foundational evidence to admit Zent's statements to Ray Sigl under the excited utterance exception. Accordingly, we hold that the district court committed error when it admitted Zent's declarations into evidence, through the testimony of witness Ray Sigl, pursuant to Rule 803(2) of the North Dakota Rules of Evidence.

 Gaarder has also raised the issue that the district court committed error when it allowed witness William D. Lord to testify to certain out-of-court statements made by Patrolman Ronald A. Ruther. Lord was called by Sigl to testify as an expert on automobile accident investigation. During redirect examination, Sigl's counsel asked Lord to relate the statements which Officer Ruther had made to Lord while they were both investigating the scene of the accident. Gaarder's counsel objected on the ground that such testimony was inadmissible hearsay. Sigl's counsel then informed the court that Officer Ruther's statements were being offered as information provided by an investigating officer which Lord, as an expert, had considered in

reconstructing the accident. At that point the court overruled Gaarder's hearsay objection and allowed Lord to testify to Ruther's out-of-court statements. Lord then related the statements made by Ruther to him. Later in his testimony, however, Lord admitted that his expert opinion had not been affected by Ruther's statements. It is obvious that the court admitted Ruther's out-of-court statements under Rules 703 and 705 of the North Dakota Rules of Evidence, which provide: [2]

### "RULE 703—BASES OF OPINION TESTIMONY BY EXPERTS

"The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

### "RULE 705—DISCLOSURE OF FACTS OR DATA UNDERLYING EXPERT OPINION

"The expert may testify in terms of opinion or inference and give his reasons therefor without prior disclosure of the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination."

We conclude that the district court, on the information before it, correctly overruled Gaarder's hearsay objection and admitted the testimony under Rules 703 and 705 of the North Dakota Rules of Evidence. It was *after* the district court had ruled on the objection and Ruther's statements had been related to the jury that Lord later testified he had not relied on Ruther's statements in forming his opinion. At that

---

**2.** The trial proceedings of the instant case occurred in January 1977, and the North Dakota Rules of Evidence did not become effective until February 15, 1977. However, this court, in *Minot Sand & Gravel Co. v. Hjelle,* 231 N.W.2d 716, 727–728 (N.D.1975), cited Rules 703 and 705 of the Federal Rules of Evidence

[which are identical to Rules 703 and 705 of the North Dakota Rules of Evidence] as a "reliable guide for State courts, in the absence of statutory provisions on the subject matter or rules of evidence declaring otherwise". Thus, Rules 703 and 705 are applicable by virtue of recent decisions of this court.

point it was too late for the district court to change its ruling because Ruther's statements were already before the jury, and no motion was made by counsel to strike that portion of Lord's testimony regarding Ruther's statements.[3] We hold the district court committed no error, with the information then before it, when it admitted Ruther's statements, through the testimony of witness Lord.

Gaarder and Sigl both have raised the issue that the jury verdict was excessive. Gaarder has also raised the issue that the jury apportionment of negligence was unsupported by the evidence. It is unnecessary to discuss these issues since the judgment will be reversed and the case remanded for a new trial on other grounds as discussed previously in this opinion.

The order of the district court denying Gaarder's motion for judgment notwithstanding the verdict is affirmed. The order of the district court denying Gaarder's motion for new trial is reversed. The judgment is reversed and the case is remanded for a new trial consistent with this opinion.

ERICKSTAD, C. J., and PEDERSON, VOGEL and SAND, JJ., concur.

---

**3.** If Gaarder's counsel had requested permission to examine Lord prior to the court's ruling on his objection, perhaps he would have elicited from Lord the fact that Ruther's statements were not considered by Lord in forming his opinion. The trial court would then have had sufficient information before it to sustain the hearsay objection.