**Thomas O. PETERSON, Plaintiff and Appellant,**

v.

**Eileen H. HART, as the Personal Representative of the Estate of George M. Hart, Deceased, Defendant and Appellee.**

Civ. No. 9538.

Supreme Court of North Dakota.

April 12, 1979.

E. J. Rose, Bismarck, for plaintiff and appellant.

Zuger & Bucklin, Bismarck, for defendant and appellee; argued by Leonard Bucklin, Bismarck.

PEDERSON, Justice.

This is a "classic" 52(a) [1] appeal where a decision has been made by a trial judge on conflicting evidence. Peterson's complaint alleged that the negligence of Dr. Hart in treating his broken leg caused osteomyelitis.[2] Neither party demanded a jury trial (Rule 38(b), NDRCivP). The case was tried by Judge Beede, who found that Dr. Hart was not negligent. A judgment was entered dismissing the action on the merits and awarding costs of $4,156.80 to defendant. We affirm the judgment.

Peterson slipped and fell as he was entering his car and crushed his lower right leg between the door and frame. It was a compound, comminuted fracture; pieces of bone fragment penetrated the skin. There were three breaks involving both bones of the leg. The orthopedic surgery was performed by Dr. Hart, who is now deceased. Special compression tension plates were affixed to the leg bones by screws. It was explained that this procedure, rather than applying a cast, is necessary in severe leg breaks to prevent deformity. After several months, when it was obvious that there was a problem, the plates were removed and the leg was placed in a cast. The cast subse-

---

1. Rule 52(a), NDRCivP, provides in part: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

2. Webster's Third New International Dictionary (1971) defines osteomyelitis as an inflammatory disease of bone that may involve the marrow, cortex, or peristeum, that is caused by an infectious agent that reaches the site by way of the blood from a source in adjacent tissue or through a penetrating injury (as a laceration or compound fracture) and that produces death of tissue with separation of the devitalized portion from the viable tissue by the formation of a sequestrum.

quently was removed and, approximately a year and one-half after the original injury, it was diagnosed that Peterson had osteomyelitis.

A damage claim was filed against the Estate of George M. Hart in Ward County Court, where it was disallowed. Peterson elected to proceed under § 30.1–19–06, NDCC (3–806, Uniform Probate Code), in the district court.

The controlling findings of fact made by the district judge, which determine the outcome in this lawsuit, are as follows:

"22. The infection complained of did not come from any act, or failure to act, by Dr. Hart. Neither the initial infection nor any increases of the infection or flare-ups that occurred from time to time were proximately caused by any failure of Dr. Hart to use reasonable care, skill or diligence.

"23. There is nothing that should have been communicated to Peterson by Dr. Hart that Dr. Hart failed to communicate. Furthermore, a reasonably prudent person in Peterson's position would have undergone the treatment given by Dr. Hart. Peterson consented to all of the surgical procedures. There is no surgical procedure which was the proximate cause of the injury and damages claimed.

"24. Dr. Hart exercised reasonable care and skill in treating his patient. He exercised the care, diligence and skill ordinarily possessed and exercised by, and reasonably expected of, orthopedic surgeons in Minot or like communities. Indeed, Dr. Hart's care was exceptionally good. Dr. Hart was not negligent."

■ This court has repeatedly held that issues of negligence and proximate cause are ordinarily questions of fact for the trier of fact. E. g., *Miller v. Trinity Medical Center*, 260 N.W.2d 4, 6 (N.D.1977). In *Bauer v. Graner*, 266 N.W.2d 88, 92 (N.D. 1978), we added that that statement applies equally as well to the question of comparative negligence. The instances in which negligence is not a question of fact for the trier of fact but a question of law are when "the evidence is such that reasonable minds

can draw but one conclusion therefrom . . . ." *McKechnie v. O'Neil*, 252 N.W.2d 875, 877 (N.D.1977).

Tort actions against medical doctors, alleging negligence, are referred to as medical malpractice cases. Peterson has not pointed out any basis for a conclusion that the rules applicable to ordinary negligence cases should not apply to this case even though courts have indicated that sometimes there may be a difference between negligence and malpractice. See for example, *Richardson v. Doe*, 176 Ohio St. 370, 199 N.E.2d 878, 880 (1964), which said: "the term, malpractice, is sometimes used loosely to refer to the negligence of a member of any professional group"; *State ex rel. Blond v. Stubbs*, 485 S.W.2d 152, 154 (Mo. App.1972), which held "that a tort-feasor is liable not only for his own original acts of negligence, but also for any acts of medical malpractice which occur . . ."; and *Camposano v. Claiborn*, 2 Conn.Cir. 135, 196 A.2d 129 (1963), which said: " 'malpractice . . . is a form of negligence'." See also 54 C.J.S. Malpractice, p. 1111. In this case Peterson specifically alleged that his injuries were caused by Dr. Hart's negligence and we conclude that the rules cited previously apply.

■ When determining whether the evidence is such that reasonable minds can draw but one conclusion therefrom, we are guided by the rule:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

Here we have opinion evidence from one doctor that Dr. Hart did not perform the medical services within good standards of medical treatment. Three doctors described it as good medical practice. The trial court's finding of fact and memorandum opinion stated that Dr. Hart's care was exceptionally good. The findings of fact were comprehensive and the factual basis

of each is clearly specified, as required by Rule 52(a), and each is supported by the memorandum opinion. Peterson acknowledges that the findings with respect to the original treatment are not clearly erroneous but he complains that the subsequent treatment is another matter. He interprets the testimony of all of the doctors as raising an inference that Dr. Hart was negligent after he discovered, or should have discovered, the infection.

The Supreme Court of Wisconsin recently said:

". . . when the trial judge acts as the finder of fact, and where there is conflicting testimony, the trial judge is the ultimate arbiter of the credibility of the witnesses. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact." *Bank of Sun Prairie v. Opstein*, 273 N.W.2d 279, 282 (Wis.1979).

We used similar language in *Slope County v. Consolidation Coal Company*, 277 N.W.2d 124 (N.D.1979).

■ The trial court is the judge of the credibility of the witnesses and the weight to be given their testimony. The trial court alone can observe the witnesses, judge their qualifications, appraise their credibility, and resolve the conflicts in the evidence. See 36 C.J.S. Federal Courts § 297(64).

When there is substantial evidence upon which the decision might have gone either way, it necessarily follows that a decision either one way or the other cannot be clearly erroneous.

" 'Such a choice between two permissible views of the weight of evidence is not "clearly erroneous." ' [Cite omitted.]" *In re Estate of Elmer*, 210 N.W.2d at 820, *supra.*

It is thus not sufficient to show that there is substantial evidence which, if believed by the fact finder, would support the appellant's point of view.

We have never said that trial court findings of fact are conclusive under Rule 52(a), NDRCivP. We do consider them when they are challenged and we set them aside if they are clearly erroneous, as where they are not supported by substantial evidence or if they are induced by an erroneous view of the law. See *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641, 644 (N.D.1976). See also 36 C.J.S. Federal Courts § 297(64), at 1234.

■ One of the purposes of the rule is to enable this court on appeal to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon. We have reiterated this a number of times. See *Ellendale Farmers Union Cooperative Ass'n v. Davis*, 219 N.W.2d 829, 836 (N.D.1974). Although it is not sufficient to find that the plaintiff has or has not proven his case, *Struchynski v. Decker*, 194 N.W.2d 741 (N.D.1972), neither is it appropriate to use findings of fact for a mere recitation of the evidence.

■ In this case, upon a review of the entire evidence, we conclude: that the findings of fact are adequate to allow us to obtain a correct understanding of the trial court's determinations; that they are supported by substantial evidence; and that they do not appear to have been induced by an erroneous view of the law. They are not clearly erroneous.

■ This brings us to Peterson's objection to the amount of costs which were allowed. Costs have been held to be a creature of statute. *City of Fargo v. Annexation Review Commission*, 148 N.W.2d 338 (N.D.1967). See also Rules 38 and 39, NDRAppP, and Rule 54, NDRCivP. Section 28–26–01, NDCC, which previously appeared to authorize the allowance of costs to the prevailing party "by way of indemnity for his expenses," no longer provides the statutory authority to award costs except where there is a finding that the pleading was frivolous (see Chapter 283, S.L.1977). We have discovered no legislative history to lead us to conclude other than that § 28–26–06, NDCC, as amended by Chapter 287, S.L.1975, is sufficient to authorize the award of costs. Section 28–26–06, NDCC, provides:

"In all actions and special proceedings, the clerk must tax as a part of the judgment in favor of the prevailing party his necessary disbursements as follows:

1. The legal fees of witnesses and of referees and other officers;

2. The necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial;

3. The legal fees for publication, when publication is made pursuant to law;

4. The legal fees of the court reporter for a transcript of the testimony when such transcript is used on motion for a new trial or in preparing a statement of the case; and

5. The fees of expert witnesses. Such fees shall be reasonable fees as determined by the court, plus his actual expense. The following shall nevertheless be in the sole discretion of the trial court:

a. The number of expert witnesses who shall be allowed fees or expenses;

b. The amount of fees to be paid such allowed expert witnesses, including an amount for time expended in preparation for trial; and

c. The amount of costs for actual expenses to be paid such allowed expert witnesses."

Applying the rules of interpretation in Chapter 1–02, NDCC, we conclude that § 28–26–06, NDCC, furnishes the necessary statutory authority to award the costs complained of here. The amount of fees to be paid to an expert must be left to the sound discretion of the trial court. Actual expenses, including travel expenses, also may be allowed if they are reasonable.

■ We point out that "the plaintiffs are not entitled to relief in our court . . . for the reason that they have failed to avail themselves of a review in the trial court of the clerk's action in taxing the costs." *Curns v. Martin,* 193 N.W.2d 214, 217 (N.D. 1971). See also *Schue v. Jacoby,* 162 N.W.2d 377, 384 (N.D.1968).

■ Our analysis of the costs indicates no basis for a reduction in the costs. The judgment, including the award of costs, is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.