Jeffrey SCHWARTZ, by Wayne Schwartz, his father and guardian, Plaintiff, Appellant and Cross-Appellee,

and

The North Dakota Workmen's Compensation Bureau, Plaintiff,

v.

Dr. F. I. GHALY, Ghaly and Associates, P. C., Bismarck Hospital, a corporation, Defendants,

Dr. T. H. Christianson, and Quain and Ramstad Clinic, Defendants, Appellees and Cross-Appellants.

Civ. No. 10066.

Supreme Court of North Dakota.

April 19, 1982.

Robert Vogel, Grand Forks, and Herman F. Gierke III, Watford City, for plaintiff, appellant and cross-appellee; argued by Robert Vogel, Grand Forks.

Zuger & Bucklin, Bismarck, for defendants, appellees and cross-appellants; argued by William P. Zuger, Bismarck.

PEDERSON, Justice.

This appeal by Schwartz is from a judgment on jury verdict for Dr. Christianson and the Quain and Ramstad Clinic (hereinafter Christianson); from an order denying the plaintiff's motion for a new trial;[1] and from an order for costs and disbursements. In addition, Christianson cross-appeals from the order on costs and disbursements. We affirm.

This medical malpractice action was initially against Dr. F. I. Ghaly, Ghaly and Associates, P. C., the Bismarck Hospital, Dr. T. H. Christianson, and the Quain and Ramstad Clinic. The complaint alleged negligence on a direct basis against Dr. Ghaly of Ghaly and Associates, P. C., and Dr. Christianson of Quain and Ramstad Clinic, and vicarious responsibility on the part of Bismarck Hospital, Ghaly and Associates, P. C., and the Quain and Ramstad Clinic.

During surgery on Jeffrey Schwartz's hand at the Bismarck Hospital by Dr. Christianson, and with anesthesia given by and under the supervision of Dr. Ghaly, Schwartz suffered a cardiac and respiratory arrest. Cardiopulmonary resuscitation was performed and, after resuscitation efforts, Dr. Ghaly advised Dr. Christianson that the surgery could continue. Dr. Christianson accepted Dr. Ghaly's assessment and continued the surgery, which lasted another 85 minutes. Schwartz failed to regain consciousness and is expected to remain in a coma for the rest of his life.

Trial of the matter was set for April 7, 1981. Sometime between March 12 and March 23, 1981, Schwartz reached a settlement with Ghaly, Ghaly and Associates, and the Bismarck Hospital. Ten days prior to trial, on Saturday, March 28, Schwartz received in the mail a supplementary answer to an interrogatory disclosing, for the first time, that Dr. Christianson intended to call Dr. Benson, an anesthesiologist, as an expert witness. The next Monday, March 30, Schwartz, claiming surprise, by telephone

---

1. Because interlocutory orders granting or denying new trials are appealable under § 28–27–02(4), NDCC, together with holdings that "the decision to grant or deny a new trial [pursuant to Rule 59(b), NDRCivP] rests entirely within the discretion of the trial court," [*Wilson v. General Motors Corp.*, 311 N.W.2d 10, 14 (N.D. 1981)], or "almost entirely," [*Porter v. Porter*, 274 N.W.2d 235, 243 (N.D.1979)], our scope of review may depend upon the timeliness of the motion for new trial and the specific wording of the notice of appeal. *See also* earlier cases, such as *Mousel v. Widicker*, 69 N.W.2d 783, 790 (N.D.1955), and *Matt v. Nomland*, 69 N.D. 552, 288 N.W. 558, 561 (1939). We noted concern in *Frederick v. Kubisiak*, 317 N.W.2d 120 (N.D.1982). That was a case tried to the court and, as in this case, the matter was not addressed in the argument. In this case we have a most confusing record. Two separate case files, # 30765 and # 29344, were certified to us. In # 29344 no judgment was entered but an appeal therein is from a judgment in # 30765. In # 30765 a motion for new trial was not ruled upon until after the appeal in # 29344 was filed (at which time the court perhaps had no jurisdiction). After much agonizing analysis, we are led to conclude that the result would be the same in this case if we review the issues (all are questions of law) as if there had been no motion for new trial but an appeal from the judgment (# 29344) or if we review those same issues as if there were a timely ruling on the motion for new trial and an appeal from a denial of that motion (# 30765). *See* the pertinent discussions in *Jensen v. Clausen*, 34 N.D. 637, 159 N.W. 30, 31 (1916); *Larsen v. Friis*, 48 N.D. 507, 185 N.W. 363, 365 (1921); *Anderson v. Bothum*, 77 N.D. 678, 45 N.W.2d 488, 491 (1950); *Goodman v. Mevorah*, 79 N.D. 653, 59 N.W.2d 192, 195–203 (1953); and *Staiger v. Gaarder*, 258 N.W.2d 641, 644 (N.D.1977). Abuse-of-discretion standard is not ordinarily applicable to claimed errors at law, e.g., *Wrangham v. Tebelius*, 231 N.W.2d 753, 757 (N.D.1975). The language used in many opinions may be misleading and, in an appropriate case, when fully researched and argued, we undoubtedly will have the opportunity to clarify the matter.

objected to the use of Dr. Benson as a witness and moved for either a postponement to take his deposition or the exclusion of Dr. Benson's testimony. A motion in writing was supplied the next day. Oral argument on the motion was heard the following Friday, April 3. The motion was denied and the case proceeded to trial.

Schwartz took exception to certain matters at trial which were directly related to the pretrial discovery. In the initial stages of discovery, both sides served interrogatories on adverse parties pursuant to Rule 26(b)(4)(A)(i), NDRCivP, requiring the names of witnesses expected to be called as experts at trial and a statement of the substance of their testimony. Schwartz disclosed that Drs. Boba and Quimby would be called as his experts, and listed seven allegations of negligence.[2] Dr. Christianson disclosed that Drs. Rost and Chuinard would be called as experts, stating that they:

"... will testify generally that the question of whether or not the surgery should have proceeded is an anesthetic question and not a surgical question and that the expertise required to determine whether surgery should have proceeded or not is within the area of specialty of an anesthesiologist and that the standards of practice applicable to the relationship between the surgeon and the anesthesiologist in the operating room dictated that the surgeon rely on the advice and counsel of the anesthesiologist and he accept his judgment. The detailed specifics of Dr. Rost's [or Dr. Chuinard's] testimony

are available to the Plaintiff either by arranging for a conference with Dr. Rost [or Dr. Chuinard] or by taking his deposition, at the mutual convenience of everyone concerned."

Schwartz contends that Drs. Rost and Chuinard testified at trial not only to the one subject disclosed in Christianson's answer but on all seven allegations of negligence involved in the case, particularly post-operative care. Schwartz made objections to the testimony of Rost and Chuinard, claiming surprise and prejudice. The objections were overruled.

We are confronted with four issues. Two issues involve the pretrial discovery process. First, whether or not the trial court abused its discretion in permitting expert witnesses, Drs. Rost and Chuinard, to testify on matters which were not disclosed in answers to interrogatories regarding the substance of their testimony, i.e., post-operative care. Second, whether or not the court committed reversible error when it denied the motion to either exclude the testimony of Dr. Benson or postpone the trial. The third issue is whether or not the court erred in refusing to give Schwartz's requested instruction on the duty of a surgeon. The fourth issue involves the trial court's ruling on costs and disbursements.

## I.

### THE TESTIMONY OF DRS. CHUINARD AND ROST

"It has been suggested that since failure to supplement a response is not listed

---

**2.** "The conduct of Dr. Christianson and the Quain & Ramstad Clinic was improper and below the appropriate standard of medical care in the following respects.

"1) They failed to take appropriate measures of resuscitation and care when an emergency arose in the operating room in that they continued operating after a catastrophe occurred rather than terminating the operation and treating the patient in intensive care, and resuscitative measures were too late and inadequate.

"2) They permitted an operation while the patient was restless, indicating either a cervical epidural anesthetic (a known complication of interscalene brachial block) or some degree of paralysis of both phrenic nerves.

"3) They permitted an overdose of Valium and morphine.

"4) They allowed the patient to suffer from inadequate ventilation and oxygenation without taking adequate steps to correct the inadequacy.

"5) They failed to require adequate oxygenation for several days after the emergency arose.

"6) They failed to provide for adequate supervision and ventilation for a five hour period after the emergency arose.

"7) They allowed the patient to become hypoxic during barbituate therapy."

Identical allegations were made as to the conduct of Dr. Ghaly and Ghaly and Associates.

in Rule 37, NDRCivP, as a type of misconduct for which sanctions are available, the court must rely on its inherent powers to impose such sanctions as it deems desirable in its wide discretion. Wright & Miller, Federal Practice and Procedure: Civil § 2050 (1970)." *Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530, 539 (N.D. 1977).

Schwartz contends that it was reversible error to allow Drs. Rost and Chuinard to testify to matters outside the scope of their answers to interrogatories. He argues that Dr. Christianson: (1) failed to state fully the subject matter upon which his experts would testify, Rule 26(b)(4)(A); (2) failed to seasonably supplement responses to requests for discovery as to the identity of experts expected to be called as witnesses at trial, and to disclose the subject matter and the substance of their testimony, Rule 26(e)(1)(B); and (3) failed to seasonably amend prior responses. Rule 26(e)(2).

Schwartz further argues that when Dr. Christianson's experts testified outside the scope of their answers to interrogatories, he was surprised and prejudiced, and was left with inadequate time to prepare a rebuttal. He further argues that Dr. Christianson did not answer interrogatories in good faith and gave evasive, false, and misleading answers. To support this argument Schwartz directs our attention to the supplemental answer in which it was first disclosed that Dr. Benson would testify for Dr. Christianson regarding not only the question of whether or not the decision to continue the operation was an anesthetic question and not a surgical question, but also regarding post-operative care. Schwartz points this out to suggest that Dr. Christianson knew, prior to trial, that post-operative care would be an issue. Schwartz argues that Dr. Christianson knew that he would have Drs. Rost and Chuinard testify on post-operative care, and should have promptly disclosed that to Schwartz.

Dr. Christianson, on the other hand, argues that Schwartz's experts implied in their deposition testimony that Dr. Christianson had done no wrong other than to take the advice of his anesthesiologist.

The trial court stated, in denying the motion for new trial:

"In this case, Defendants Christianson and Quain & Ramstad Clinic, after receiving answers to their interrogatories propounded to Plaintiff, took the deposition of Plaintiff's experts Boba, Quimby and Zylanoff. It is Defendants' contention that Quimby's and Zylanoff's opinion, as expressed in the depositions, indicated negligence on the part of the anesthesia people but very little, if any, negligence on the part of Defendants Christianson and Quain and Ramstad Clinic. At the trial these same experts testified to the negligence of Christianson and Quain and Ramstad Clinic. In so doing, their opinions expressed in court seemed somewhat expanded over the opinions in the deposition. ... Some of this was explained as due to an inadequate record at the deposition. I do not intend to intimate that these people manufactured evidence or even that they changed their opinion. However, at the time the depositions were taken, the expert focused on the very obvious negligence of Ghaly to the exclusion of a possibility of slight negligence on the part of Christianson. Defendants' attorney asked a general question attempting to limit the deponent's opinion of negligence to the parties other than his clients and was successful. As so often happens, the focus at the time of deposition was on Ghaly and at trial was on Christianson and the witness is forced to expand on the testimony. However, defendants were faced with different testimony and were forced to defend against a different issue of fact than disclosed by discovery."

We note that, during the taking of the depositions of Schwartz's experts, general questions were asked regarding post-operative care. There were no specific questions posed to the witnesses regarding their opinion as to the post-operative care rendered by Christianson, or specific questions regarding the duty of Christianson as an admitting physician. Dr. Christianson argues

that he was justified in interpreting the answers he received to mean that the witnesses found no fault on Christianson's part in post-operative care.

In addition, Dr. Christianson argues that at trial Schwartz's witnesses expressed an opinion that Dr. Christianson was negligent during post-operative care, requiring him to expand the scope of his defense.

Schwartz argues that Dr. Christianson misconstrued the cause of action against him and, as a result, mistakenly assumed that the negligence in post-operative care was charged against Dr. Ghaly only. He chose, in taking depositions, not to question Schwartz's experts specifically on the subject of post-operative care rendered by Dr. Christianson. Schwartz further argues that it was clear from the complaint and the answers to interrogatories that he was asserting all seven items of negligence against Dr. Christianson and that Dr. Chris-

tianson, not Schwartz, should suffer any consequence resulting from the mistake he made.

The trial court determined that the settlement with Ghaly changed the emphasis of the case. The trial court's memorandum opinion states that Schwartz's experts had somewhat expanded their testimony at trial beyond their deposition testimony, when the focus was on Ghaly and not Christianson. The trial court concluded that fairness required that Dr. Christianson be allowed to rebut the testimony.[3]

The trial court also reviewed the cases cited by Schwartz where evidence was excluded because of failure to comply with discovery rules, and found them to contain deliberate or gross violations of the rules, resulting in surprise and prejudice. In the instant case, "surprise and prejudice are absent."[4]

3. In a memorandum opinion denying the motion for new trial, the trial court stated:

"(1) Plaintiff's experts had somewhat expanded their testimony to find negligence on the part of Christianson over their response to a general deposition question asked of them at a time when the entire focus was on someone other than Christianson. In fairness, Defendants should be allowed to counter this evidence;

"(2) The interrogatory answer is couched in general terms giving the broad outline of expected opinion, but it cannot be expected that the witness should be denied the opportunity to explain his opinion and give the basis for it;

"(3) Denying the admission of evidence solely on the basis of discovery rules is a drastic remedy to be resorted to only if there is prejudice;

"(4) The settlement shortly before trial of all defendants except Christianson and Quain and Ramstad Clinic changed the complexion of the case and was a development that forced both parties to accommodate their preparation to a new situation;

"(5) There was nothing to indicate Defendants deliberately tried to mislead or surprise the Plaintiff.

.     .     .     .     .

"It should also be noted that Plaintiffs took advantage of their opportunity to rebut the evidence claimed to have been admitted as not being covered by the answers to interrogatories by presenting Dr. Quimby at the conclusion of Defendants' case.

"Although this ground of new trial motion is directed to the testimony of Doctors Chuinard and Rost, there was little, if any, testimony on the part of Dr. Chuinard that went outside of the specific terminology of the answer to the interrogatory. In fact, the question objected to by Plaintiff during Chuinard's direct testimony . . . only inquired of the standard of practice of an orthopedic surgeon and can hardly be said to be beyond the scope of the answer. This was the only specific objection to a specific question, the Plaintiff thereafter relying on a standing objection."

4. The trial court's memorandum opinion, in part, states:

"I have reviewed the cases cited by Plaintiff, and all of them contain facts under which evidence was held to be excluded because of failure to comply with discovery rules. I have no particular disagreements with these cases because their facts show a gross deviation from the rules to the detriment of a party.

.     .     .     .

"As previously stated, all of these cases contain facts under which there was a deliberate or grossly negligent violation of the discovery rule resulting in surprise and prejudice to the other side. In our case there is no such showing. In this case the settlement altered Plaintiff's focus and evidence, the defendants during trial reacted as expected. Surprise and prejudice are absent.

"During arguments on this motion, the effect of the settlement was discussed with

■ We conclude that it was not an abuse of discretion for the trial court to conclude, under the circumstances, that Dr. Christianson's witnesses' testimony regarding post-operative care should be admitted. We cannot say that the trial court abused its discretion with respect to the testimonies of Drs. Rost and Chuinard.

## II.

### THE TESTIMONY OF DR. BENSON

Dr. Christianson states that he called Dr. Benson to testify not only that Dr. Christianson was not negligent but that Dr. Ghaly was negligent, even though Dr. Ghaly had settled. Under the holding in *Bartels v. City of Williston*, 276 N.W.2d 113 (N.D. 1979), the negligence of Dr. Ghaly was still at issue under the North Dakota comparative negligence law. Section 9–10–07, NDCC.

In *Olson v. A. W. Chesterton Co.*, 256 N.W.2d 530 (N.D.1977), we were confronted with circumstances somewhat similar to the instant case. Chesterton assigned as error the trial court's refusal to exclude the testimony of Olson's expert witness because Chesterton was not notified of the expert's existence or the substance of his testimony until the day of trial when Chesterton was served with a supplemental response to an interrogatory posed by a defendant who was later dismissed from the action. The trial court ruled that because Chesterton had not posed the interrogatory, it had no standing to object to the late notice. This court upheld the trial court, stating that the decision to allow the expert to testify would not constitute an abuse of discretion even if Chesterton did have standing.

Schwartz argues that the instant case is distinguishable from *Chesterton* because the interrogatory not answered in *Chesterton* was made by a different party than the one who complained of the failure to supplement the answer. Nevertheless, we believe that the principles discussed in *Chesterton* are applicable to the instant case. The spirit and intent of the Rules are to eliminate surprise at trial. *See Chesterton, supra*, 256 N.W.2d at 539.

■ The trial court in the instant case allowed Benson to testify because: (1) there was no violation of the Rules of Procedure; (2) the court was not satisfied that Schwartz did not know in advance of Dr. Benson and his opinion; (3) it was foreseeable, should the plaintiff settle with Ghaly, that the remaining defendants would attempt to show that Ghaly and the anesthesia team were the sole negligent parties; (4) that there was no basis for a claim of surprise or prejudice; and (5) the costs of a continuance would be high.[5]

Plaintiffs claiming this was not a factor in the events. Prior to settlement plaintiff had an excellent case on the basis of negligence of Ghaly and his imputed negligence to Ghaly & Associates and Bismarck Hospital. The negligence of Christianson and Quain and Ramstad Clinic was bound to be a small percentage of 100 percent, and Plaintiff was obligated to have been prepared for trial against all defendants including Christianson and Quain and Ramstad. After the settlement and during trial we heard Plaintiff's evidence against Christianson and Quain and Ramstad. Plaintiff had no orthopedic specialist to establish the standard of care of Christianson. Rather, this was done through the testimony of anesthesiology specialists who went somewhat beyond their pretrial deposition testimony. This would indicate that Plaintiff was well prepared against the anesthesiology team, but had not been able to muster much evidence against Christianson for the obvious reason that the case against Christianson was not as strong. The settlement caused a shift in emphasis on Plaintiff's part, a response to it on the part of the defendant, but none of it can be blamed on a violation of discovery rules and consequent surprise or prejudice resulting in denial of a fair trial."

5. The trial court set out in its memorandum decision denying motion for new trial the factors which led it to allow the testimony of Dr. Benson and the denial of the plaintiff's motion for continuance as follows:

"(1) That Dr. Benson early in the case had rendered an opinion finding Dr. Ghaly negligent and Dr. Christianson not negligent, and that Plaintiff knew of this witness, although there was an agreement with Ghaly's attorney that this witness would not be called;

"(2) That Plaintiff then settled with Ghaly, which made Benson available as a witness to the other defendants on March 23, 1981;

"(3) That on March 25, 1981, Defendants retained Benson, notified Plaintiff's attorney

The determination to admit Dr. Benson's testimony, under the circumstances, and the refusal to postpone the trial, were within the province of the trial court and we will not reverse in the absence of a showing of abuse of discretion. *See Chesterton, supra.* When this court reviews an issue involving a discretionary decision by a trial judge, we cannot supervise so closely as to insure a perfect trial. We have often stated in the context of criminal cases that "a defendant is entitled to a fair trial but not necessarily to a perfect trial." *State v. Faul,* 300 N.W.2d 827, 833 (N.D.1980). *See also, Michigan v. Tucker,* 417 U.S. 433, 446, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974). The trial judge in the instant case allowed Dr. Benson to testify and refused to postpone the trial. Other judges, perhaps, might have ruled otherwise, but we cannot say the trial court abused its discretion.

### III.

*Plaintiff's Requested Instruction Number 8.*

Schwartz argues that it was prejudicial in this case to fail to tell the jury that there was, as a matter of law, a duty on Dr. Christianson, the admitting physician, to follow the course of the treatment during Schwartz's stay in the hospital. He directs our attention to a hospital bylaw which states that a primary physician is responsible for a patient until discharge.

Schwartz requested the following instruction:

> by phone and proceeded to supplement interrogatories as required by the Rules. Plaintiff did get about 10 days' notice;
>
> "(4) That no violation of the Rules of Civil Procedure had occurred, and the interrogatories were seasonably supplemented as required by Rule 26;
>
> "(5) That Plaintiff had known of Benson and his opinion and that it was foreseeable that should they settle with Ghaly the other Defendants would use a witness whose opinion was that the anesthesia team which Ghaly headed were the sole negligent parties;
>
> "(6) That Benson was an anesthesiologist and his evidence would not be much different from Defendants' other anesthesia expert Dr. Rost;

"A surgeon has the right to cancel and thereby control the activities of an anesthesiologist treating his patient; he also has an individual, non-delegable duty to exercise his own judgment in the care of a patient of his who is being cared for by others and himself and to warn of disapproval of the actions of others if he should have learned of, and disapproved of, such actions."

The trial court refused the instruction for the following reasons:

"... The first two lines are a statement of the captain of the ship doctrine under which a surgeon would have the right to control the activities of an anesthesiologist. This is contrary to the standard of medical care testified to by all of the expert witnesses, including those presented by Plaintiff, and overlooks the fact that the surgeon and anesthesiologist are both specialists with different responsibilities, each responsible for care of the patient within the realm of his own specialty. The standard of care and its violation must ordinarily be shown by expert testimony. *Winkjer v. Herr,* 277 N.W.2d 579. To instruct the jury that one should control the other would be contrary to the evidence and error.

"The rest of No. 8 was in effect given in the instruction entitled 'Malpractice—Duty of Physician.' "

The captain-of-the-ship doctrine is grounded on principles of agency.

"The essential question is whether one is subject to the control of another not only

> "(7) Presumably, Plaintiffs had prepared their case against Defendant Christianson, and since Benson's testimony was not expected to be a radical departure from what other evidence the defense had available, there was no basis for a claim of surprise or prejudice, especially in view of the fact that Plaintiff's attorney had known of this witness for a long time;
>
> "(8) Costs of continuances would be high as shown in the affidavit of defendants' attorney submitted at the beginning of the hearing. Judges routinely get continuance motions in 'big' cases, and this is a factor to be considered."

to the work to be done but also the manner of performing it. . . . [T]he master must have control not only over the agent but over the work and the performance thereof before liability can be extended to him. [Citations omitted.]" *Grubb v. Albert Einstein Medical Center*, 255 Pa. Super. 381, 387 A.2d 480, 487 (1978).

We agree with the trial court that the testimony at trial does not indicate that Dr. Christianson had a right to control Dr. Ghaly's performance. Nor is there evidence indicating that Dr. Ghaly was selected, hired, or paid by Christianson. *See Adams v. Leidholdt*, 38 Colo.App. 463, 563 P.2d 15, 19 (1977).

The instruction given is, in pertinent part, as follows:

"Once a physician has undertaken to treat a patient, his employment and duty as a physician to the patient continues until ended by consent of the patient or the physician withdraws from the case after giving the patient notice and a reasonable time to employ another doctor or the condition of the patient is such that the physician's services are no longer reasonably required."

. . . . .

"A physician is not liable for the negligent acts or omissions of another physician treating the same patient unless you find that he was, or ought reasonably to have been, aware of the acts constituting malpractice on the part of the other physician.

"The evidence shows that the hospital had certain by-laws in effect at the time of Jeffrey Schwartz's surgery on May 16, 1979.

"If you find that the defendants or any of them failed to comply with those by-laws, and the by-laws set a standard of medical care, and such violation was a proximate cause of the injury to plaintiff, you may consider such violation as some evidence of negligence by said defendant or defendants."

We have consistently stated that jury instructions will be regarded as a whole when we consider their correctness. An erroneous or insufficient instruction will be considered cured if the instructions as a whole fairly advise the jury as to the law which pertains to the essential issues. *Wasem v. Laskowski*, 274 N.W.2d 219, 222–223 (N.D.1979).

The instructions, as given, fairly advised the jury. Had they found Dr. Christianson negligent in the supervision of the care of Schwartz, they were entitled to impose liability on the basis of the court's instructions.

We believe that the instructions on the whole properly informed the jury. There was no error at law and the trial court did not abuse its discretion in denying a new trial on this ground.

IV.

TAXATION OF COSTS AND DISBURSEMENTS

Dr. Christianson filed an itemized statement of costs and disbursements totaling $19,648.09. The trial court disallowed some items and reduced some items, resulting in allowable costs and disbursements totaling $9,406.88.

Christianson objects to the trial court's disallowance of his travel costs for depositions which were taken by Schwartz, the cost of transcripts of certain depositions, and a consultation fee and travel expenses for Dr. Rost for depositions at which he acted as an expert advisor to Christianson's attorney. He also objects to the trial court's refusal to allow an expert witness fee for Mr. Lundberg, who was the secretary of the Board of Trustees of the Bismarck Hospital, as well as general counsel for the hospital. The trial court determined that Lundberg testified in his capacity as secretary of the Board of Trustees, not as an expert.

Schwartz objects to the trial court allowing Christianson's costs for phone calls, transportation, meals, lodging and a hotel meeting room incurred in connection with arranging and taking the depositions of two of Schwartz's expert witnesses in other

states. He also objects to the amounts allowed for expert witness fees and travel expenses for Christianson's experts.

"Costs have been held to be a creature of statute. *City of Fargo v. Annexation Review Commission*, 148 N.W.2d 338 (N.D.1967). See also Rules 38 and 39, NDRAppP, and Rule 54, NDRCivP." *Peterson v. Hart*, 278 N.W.2d 133, 136 (N.D. 1979).

■■■ Costs under § 28–26–06(2) for "[t]he necessary expenses of taking depositions and of procuring evidence necessarily used or obtained for use on the trial," are within the trial court's discretion. *See United Development Corp. v. State Highway Dep't*, 133 N.W.2d 439, 445 (N.D.1965). If we had been the trial court there are some items we would have allowed and others we would have disallowed. We are not the trial court, however, and we cannot say that the disbursements allowed under § 28–26–06(2) involved an abuse of discretion.

While we may not be in agreement with the amount of expert witness fees and expenses allowed by the trial court, § 28–26–06(5) provides that such matters are "... in the sole discretion of the trial court ..." *See Schmidt v. Plains Elec., Inc.*, 281 N.W.2d 794, 803 (N.D.1979). "Actual expenses, including travel expenses, also may be allowed if they are reasonable." *Peterson v. Hart, supra*, 278 N.W.2d at 137.

The judgment, the order denying the motion for new trial, and the order for costs and disbursements are affirmed.

VANDE WALLE, Acting C. J., SAND, J., and LECLERC and HUNKE, District Judges, concur.

LECLERC and HUNKE, District Judges, sitting in place of ERICKSTAD, C. J., and PAULSON, J., disqualified.

SAND, Justice, concurring specially.

While I concur in Justice Pederson's opinion, I deem it appropriate to make an additional comment.

In any action involving negligence of more than one tortfeasor so as to bring into operation the comparative negligence concept, North Dakota Century Code § 9–10–07, an opportunity, if not a tendency, exists for each tortfeasor to attempt to shift the blame on the other tortfeasor or tortfeasors, as the case may be. Likewise, in a multiple tortfeasor action, where a settlement has been made with one or more tortfeasors, an opportunity, if not a tendency, exists for the plaintiff to attempt to impose or shift the greater blame upon the remaining tortfeasor or tortfeasors. Conversely, the opportunity, if not a tendency, exists for the remaining tortfeasors to attempt to shift the greater blame upon the tortfeasor or tortfeasors who have settled with the plaintiff.

The ultimte fact finder, jury or judge, as the case may be, in discharging its responsibility will make the appropriate adjustment. Arguably, the fact finder might resent an attempt to shift blame and, as a result, may be inclined to view the situation opposite to what the party wanted to accomplish and thereby produce the opposite effect. Furthermore, those countervailing opportunities or tendencies under our adversary legal system should offset each other and balance the scales so that the fact finder, judge or jury will make the appropriate evaluation and judgment.