(62 N. W. Rep. 640.)

---

EMMA TIERNEY, *et al vs.* PHOENIX INSURANCE CO.

Opinion filed February 7th, 1895.

**Insurance—Insured's Interest—Evidence.**

> In an action on an insurance policy, defendant having proved a divestiture, before the loss, of plaintiff's interest in the insured property by virtue of foreclosure proceedings, regular and legal on their face, followed by a deed purporting to convey all defendant's interest in the property, *held*, it was error to receive in evidence as against defendant a judgment, annulling such foreclosure proceedings, in an action commenced subsequently to the loss (to which action defendant herein was not a party, and of which it had no notice,) for the purpose of establishing the fact that such foreclosure proceedings were void, and thus defeat the defense that the insured had no insurable interest in the property at the time of the loss.

Appeal from District Court, Cass County, *McConnell,* J.

Action on a policy of insurance by Emma Tierney and Charles A. Morton against the Phoenix Insurance Company of Brooklyn, N. Y.   Plaintiffs had judgment, and defendant appeals.

Reversed.

*Kitchel, Cohen & Shaw* and *O. W. Francis,* for appellant.

Under the policy in suit the rights of the mortgagee were subject to be defeated by any act which defeated the rights of the mortgagor.   Section 4104, Comp. Laws; *Grosvenor* v. *Atlantic F. Ins. Co.,* 17 N. Y. 395.   The endorsement "Loss if any payable to Edwin Morris mortgagee as his interest may appear" is not an assignment of the policy, nor a contract to insure the mortgagees interest, but only entitles the mortgagee to payment of what the mortgagor is entitled to recover.   *Continental Ins. Co.* v. *Holman,* 92 Ill. 154; *Loring* v. *Manufacturers Ins. Co.,* 8 Gray, 28; *Hale* v. *Ins. Co.,* 6 Gray, 172; *Fogg* v. *Ins. Co.,* 10 Cush. 346; *Franklin*

*Savings Institute* v. *Ins. Co.*, 119 Mass. 240; *Brunswick Savings Institute* v. *Ins. Co.*, 68 Me. 314; *Perry* v. *Ins. Co.*, 61 N. Y. 217. Such a clause does not in any manner waive the provision of the policy, which avoids it in case the mortgage is foreclosed. *Titus* v. *Ins. Co.*, 81 N. Y. 417; *Quinlan* v. *Ins. Co.*, 133 N. Y. 362; *Meadows* v. *Ins. Co.*, 62 Ia. 391; *Merchants Ins. Co.* v. *Brown*, 25 At. Rep. 992. The foreclosure followed by a delivery of the sheriff's deed was a clear change of title. *Lay* v. *Home Ins. Co.*, 24 Minn. 315; § 5428, Comp. Laws. And this change of interest avoided the policy.

*Ball & Watson*, for respondent.

CORLISS, J. Defendant, to reverse the judgment appealed from, summons to its aid the general rule of law that a judgment is, as against strangers, only evidence of its own existence; that it can never be used, as against them, to prove any other fact. Plaintiff challenges the right of defendant to invoke this rule under the facts of this controversy, claiming that it is inapplicable to this case. These two conflicting contentions present the issue we must meet and decide.

The action was upon an insurance policy issued by defendant to the plaintiff Emma Tierney upon her house in the City of Fargo, in this state. Upon this property one Edwin Morris held a mortgage. The policy contained the usual provision that the loss, if any, should be paid to the mortgagee as his interest might appear. The plaintiff Charles A. Morton claims an interest in this policy, as the assignee of this mortgage, subsequent, however, to the foreclosure and sale hereinafter mentioned. There is no controversy touching the fact of the loss by fire, or the extent of that loss, or the furnishing of proper proofs of loss. Two defenses were relied on, but only one of them need be adverted to in this opinion. Among other conditions, the policy contained the following: "The entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * * if any change,

other than by the death of an insured, take place in the interest, title, or possession of the subject of insurance (except change of occupants, without increase of hazard) whether by legal process or judgment, or by voluntary act of the insured." Upon trial, defendant proved that the mortgage already referred to had been foreclosed by advertisement, and the property sold, and that, after the expiration of the statutory period allowed for redemption, the foreclosure proceedings, no redemption having been made, were consummated by a deed to the purchaser, who was Edwin Morris, the then owner of the mortgage. This was before the fire which caused the loss. It is undisputed that these foreclosure proceedings are regular on their face; nor is it contended that they did not *prima facie* establish the loss by the plaintiff Emma Tierney of all insurable interest in the insured property. The defendant had therefore established a defense to the action, both under the terms of the policy and independently of them. Even in the absence of any provision in the contract against change of interest, the underwriter is exonerated from all liability if at the time of the loss the insured has no interest whatever in the insured property. Comp. Laws, § 4112; May, Ins. § 264. The loss having occurred after the foreclosure proceedings had culminated in the delivery of a deed, the defendant was not liable unless as a matter of fact these proceedings were void. The plaintiffs, fully realizing this, sought to carry the destructive force of this blow at their right to recover by an effort to establish that the foreclosure was a nullity. The evidence which they adduced for that purpose, and which the court received over defendant's objection, is here assailed on the ground that it was not competent, as against the defendant, to prove the invalidity of the foreclosure. This evidence was a judgment annulling the foreclosure proceedings, in an action to which defendant was not a party, and of which it had no notice. After the fire, the plaintiff Emma Tierney instituted an action against Edwin Morris, who was the purchaser at the foreclosure sale, and was also the owner of mortgage foreclosed at the time of the fore-

closure thereof, to secure a decree adjudging such foreclosure to be void. In that action a decree was entered annulling the foreclosure on several grounds. It was this decree that the court permitted the plaintiff to use as evidence against the defendant, a stranger to the action in which it was rendered, to prove the fact that the foreclosure proceedings were void. No other evidence was offered for that purpose. Indeed, no other evidence was necessary, according to the view of the plaintiffs' counsel; for they insist that such judgment conclusively settled this fact, as against the defendant in this action, as well as against the defendant in the action in which the judgment was rendered. If this evidence was not competent to prove this fact as against the defendant herein, then the judgment appealed from must be reversed, not only for the error committed in receiving such evidence, but also for the further reason that there was no evidence to warrant the finding that the foreclosure was void, no other evidence having been offered to prove this fact. We are agreed that such judgment proves nothing, as against the defendant, except its own existence, although the question is not free from doubt. This is the general rule. Beyond the small circle which contains parties and privies, a judgment in personam · is evidence only of the fact that such a judgment has been rendered. It cannot be used to prove any other fact which it establishes as between the parties to the judgment. 2 Black, Judgm. § 600. No further citation is necessary in support of a doctrine so elementary. The rule is salutary. Nay, it is indispensable to the administration of justice. The contrary doctrine would be subversive of the fundamental principle, recognized by all civilized nations, that every one is entitled to a hearing before being affected in his person or property by the judgment of a court. As a general rule, a stranger to a litigation has no knowledge of its pendency. If by chance he learns of it, he is yet powerless to appear in it. He has no right to offer evidence or cross-examine witnesses. He cannot be heard in argument on either the law or the facts. He cannot move for a new trial. He has no right to appeal. He is utterly without voice in the proceedings.

We are unable to find any decision to support the contention of the plaintiffs, nor can we discover any reason why this case should be taken out of this elementary and wise rule. A few considerations will disclose the importance of rigidly enforcing it in a case like the one before us. The fact which alone will render defendant liable is not the judicial annulment of these foreclosure proceedings, but their actual invalidity. It is possible that they were valid, despite the decree adjudging them to be void. The court in that case may have erred as to the law, and because of this error may have adjudged void a perfectly regular and legal foreclosure. One of the grounds on which the court based its conclusion that the foreclosure was void was the failure sufficiently to advertise the property for sale. The decree does not disclose what facts were found with respect to the publication of notice of sale. There is only a general finding that the notice of foreclosure sale was not published once each week for six successive weeks. How many publications were actually made, and upon what dates, does not appear from the decree. It is true the statute requires the publication should be made once each week for six successive weeks. But how many insertions of the notice in the paper must be made, and at what times they must be made with respect to one another, and at what time the last publication must be made with reference to the day of sale, to constitute a compliance with such a requirement, is a somewhat mooted question. We have no means of ascertaining whether the court did not adjudge, in the action in which the judgment received in evidence was rendered, a publication to be insufficient which we would hold to be perfectly good. Indeed, according to plaintiff's contention that the judgment conclusively settles, as against defendant herein, the invalidity of the foreclosure, we would be compelled to hold the defendant liable, although the judgment disclosed on its face that the court had erred in holding the publication insufficient, and in annulling the foreclosure proceedings on that account; and that, as a matter of fact, the foreclosure was valid, and did pass to the purchaser the title of

the insured to the property. Had the defendant in this action been heard in the other action on the various grounds on which the foreclosure was annulled, an entirely different judgment might have resulted. In fact, no one appears to have been actually heard in that case in way of defense. The judgment was rendered on default. The complaint was unverified. There was no answer, nor was there any trial of any issue. The plaintiff in that case had a deep interest in setting aside the foreclosure. It would give her further time to save her land, which was lost to her if the foreclosure was valid. It would give her the right to possession until a new foreclosure could be made and the year for redemption should expire. In the event of the judgment annulling the foreclosure being held conclusive as against the insurance company, the plaintiff would be able to pay the mortgage debt out of the insurance money, and have a balance left for herself, besides regaining unincumbered the land she had utterly lost if the foreclosure proceedings were valid and were to stand. The defendant, also, in that action may have had an interest in the annulment of the foreclosure if the judgment therein would be effectual to settle, as against the insurance company, the fact that the foreclosure was void. The property which he bought in for the amount of his mortgage and the expenses of the foreclosure—a sum less than $1,000—may have become so lessened in value by the destruction by fire of a house thereon worth over $1,000 that he could not get out of the property, so stripped of its building, the money he had put in the property, unless he could collect the insurance money. It is certain that he did not defend the suit, and it is also true that the action was not brought until after the house had been burned. These facts and considerations are adverted to, not to show that there was collusion in the case in which the judgment was rendered, for defendant's counsel disclaims any purpose to urge the fact of collusion against this judgment, but they are referred to as affording illustrations of the wisdom of the general rule which we apply in this case; and the great danger of ignoring it in a litigation presenting

the features which this case does.  If a judgment rendered under the circumstances to which we have alluded is evidence against a stranger of any fact which the judgment establishes as between the parties to it, such stranger may easily be made the victim of unprovable collusion which may accomplish its purpose without a syllable of perjury.  An unverified complaint may be followed by an answer putting in issue all of its allegations.  On the trial, defendant may admit in open court that all the averments of the complaint are true.  A verdict will follow, culminating in a judgment which, upon the face of the record, will appear to be the result of a *bona fide* contest, but which in reality is no more than the echo of an admission of the defendant in his own interest, the interest he has of settling a fact in his own favor as against one who is powerless to prevent the judgment.  To prove collusion under such circumstances, or, indeed, in any case, is extremely difficult, and in many instances it will be impossible to prove it. To protect strangers to an action against the machinations of those who would seek collusively to bind him by the judgment therein, the only safe course is to adhere rigidly to the general rule that the judgment proves, as against such stranger, merely its own existence.  And, aside from this consideration, it is contrary to the spirit of modern civilization to deny a litigant the right to be heard on all questions of law and fact that affect his interests.

We are referred to the case of *Insurance Co.* v. *Sampson*, 38 Ohio St. 672, as being an express authority for plaintiffs.  That case is clearly distinguishable from the case at bar.  In that case it appears that, after a sale of the insured property had been confirmed by the court, the fire occurred; and thereafter, but at the same term, the order confirming the sale were set aside, and another sale of the property ordered.  The court held that the facts showed that the insured had not lost all insurable interest at the time of the fire.  There was no provision in the policy relating to a change of interest in the property, but the question was whether the insured had before the fire lost all insurable interest

in the property, as it is only a total extinction of all interest before loss which will work a destruction of the underwriter's liability when the policy is silent on the subject. That which would divest the insured in that case of all interest was a confirmation of the sale by the court. It is true that an order confirming the sale had been entered previous to the fire, and had not been set aside at the time the fire occurred. But the sale had not been finally confirmed at that time. During the same term the order might be set aside. As a matter of fact, it was set aside during such term. The common law touching the power of the court over its orders and judgments while the term lasts prevailed in Ohio at this time. Until the term at which the order of confirmation was made had come to an end, that order was in the breast of the court, and might be set aside, even without notice to the parties. The sale had been tentatively, but not finally, confirmed. When the order of confirmation was vacated, it was as though it had never been made. In legal contemplation, the sale had never been confirmed. The question there was not whether a valid sale had been made, for a valid sale alone would not divest the insured of all interest in the property, but the vital inquiry was whether that sale had been confirmed, for without confirmation the insured would still retain an insurable interest in the premises. The order vacating the order of confirmation was received in evidence, not to prove that the sale was invalid, but to show that the sale had never, in legal contemplation, been confirmed. The only competent evidence of this fact—indeed, the only evidence which could possibly be procured—was the order itself, which, under a settled rule of practice, established that the prior order of confirmation, in the eye of the law, had never had any existence. It is upon this ground that the court held that the insured had not lost his interest in the property, and that the insurance company was therefore liable. The question before us was not involved in that case, was not discussed in the opinion, nor do we find any allusion to it in the briefs of counsel.

It is urged that the case falls within the rule that a judgment is

always evidence against a stranger when relied upon by any person as a muniment of title. This rule is well settled. *Barr* v. *Gratz's Heirs*, 4 Wheat. 213; 1 Greenl. Ev. § 539; 1 Whart. Ev. § 821; Freem. Judgm. § 416. But the facts of this case do not bring it within this rule. The utmost scope of the doctrine is that a person establishing his title may offer in evidence a judgment in the chain of title, although neither the plaintiff nor the defendant in the action in which such judgment is offered in evidence was a party thereto. But such judgment can never be used as evidence when the same is hostile to the claim of the other party. It cannot be received as proof against the title of the one by whom it is offered. The plaintiff, to make out his right in ejectment, must affirmatively prove his own title. To do this he may use any judgment in the chain of his title, the same as a conveyance. But the moment he attempts by means of such judgment to cut off the right of the defendant—to oppose to his claim of title an adjudication inimical to such claim—the general rule applies that the judgment is evidence of its own existence, and no more. To illustrate this distinction, we will take the case of a contest between two persons claiming remotely, under different conveyances, from a common grantor. The plaintiff, to establish his *prima facie* title, may put in evidence all judgments in his claim of title subsequent to the deed under which he claims. These judgments in no manner affect the defendant or prejudice his rights. His contest reaches back to a period antedating them all. He attacks the deed from the common grantor under which plaintiff claims, and that alone. The plaintiff merely uses the subsequent judgments to show that he has succeeded to the interest of the grantee in the deed so assailed. He puts them in evidence the same as any ordinary conveyance. See *Barr* v. *Gratz's Heirs*, 4 Wheat. 213–220; Freem. Judgm. § 416. But an entirely different case would be presented, and one calling for the application of a radically different principle, if the plaintiff should seek to defeat the original deed from the common grantor under which defendant claims, by a judg-

ment annulling such deed, in an action to which defendant was not a party, rendered after defendant had bought the property. In such a case the defendant, being neither a party nor a privy, would not be bound by such judgment, and it could not be received in evidence to destroy his title. To allow it the effect to cut off the defendant's rights would be to accord to it a wider operation than the mere establishment of plaintiffs' title. It would in such a case not only be a muniment of plaintiffs' title, but also a conclusive barrier to defendant's claim to the property. The statement by Judge Story in *Barr* v. *Gratz's Heirs*, 4 Wheat. 213, at page 220, of this rule invoked by counsel for respondents, accords with the views we have just expressed. He says: "Another error alleged is that the court allowed a decree of the circuit court in the chancery suit between Michael Gratz and John Craig and others to be given in evidence to the jury. In our opinion, this record was clearly admissable. It is true that, in general, judgments and decrees are evidence only in suits between parties and privies. But the doctrine is wholly inapplicable to a case like the present, where the decree is not introduced as *per se* binding upon any rights of the other party, but is an introductory fact to a link in the chain of the plaintiffs' title, and constituting a part of the muniments of his estate. Without establishing the existence of a decree, it would be impossible to establish the legal validity of the deed from Robert Johnson, to the lessors of plaintiffs, which was made under the authority of that decree; and, under such circumstances, to reject the proof of the decree would be in effect to declare that no title derived under a decree in chancery was of any validity except in a suit between parties and privies, so that in a suit by or against a stranger it would be a mere nullity. It might with as much propriety be argued that the plaintiff was not at liberty to prove any other title deeds in this suit, because they were *res inter alios acta*." In the case at bar the judgment was not offered for the mere purpose of establishing a link in a chain of title in a contest over the title to land. In fact, there was not contest between two persons, each claiming

title to the property in question. The judgment was used by the plaintiff, with the sanction of the court, "as *per se* binding upon the rights of the other party," *i. e.* the insurance company, which was neither a party to the judgment nor in privity with any party thereto. And it was used for the sole purpose of establishing conclusively the fact that the forclosure was void.

In stating the general doctrine that a judgment is not evidence as against strangers, except in a qualified way, we have hitherto omitted an important element from our statement of the doctrine. This was done that we might consider this element by itself. The doctrine is not that a judgment is evidence against strangers of its own existence merely, but that it is also evidence against a stranger of the legal consequences resulting from the fact that such a judgment was rendered. Mr. Greenleaf says that a judgment is "the only proper legal evidence of itself, and is conclusive evidence of the fact of the rendition of the judgment, and of all the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence." 1 Greenl. Ev. § 538. See, also, Whart. Ev. § 823; 2 Black, Judgm. § 604; Freem. Judgm. § 416; 7 Am. & Eng. Enc. Law, p. 76. As broadly stated by Mr. Greenleaf, the rule would embrace this case. The legal consequence of the judgment received in evidence was that, as between the parties to that action, the foreclosure was adjudged to be void. But when we examine the cases cited to sustain this doctrine we find none which will warrant the sweeping statement made by Mr. Greenleaf in enunciating the rule. Such a statement would carry the rule so far as seriously to impair the value of the general rule to which it is an exception. An illustration will suffice to show this. B., it is claimed, has at the point of a pistol wrested from A. a conveyance of his property. Immediately thereafter, B. sells the property to C., who buys in good faith and for value. A. promptly moves to protect his alleged rights. A. secures a decree adjudging his deed to be void from the time of delivery. The legal consequence of this decree is to destroy B.'s title under the deed; to show that it

never existed. A. now sues C. for possession of the property, and offers in evidence the judgment in the case against B. as conclusively establishing the invalidity of the deed to B., and hence the invalidity of the deed to C., who could not obtain title from a person who had no title. If the rule is correctly stated by Mr. Greenleaf, the judgment settles this question of B.'s title as against C., although a stranger to the judgment, for the legal consequence of that judgment is that B. never had any title to the property at all. But it is obvious that this judgment would not conclude C. on this question, he not having been made a party to the action, unless the courts are prepared to throw away the substance of the rule that one must be heard on a question before it is conclusively settled against him. Certain legal consequences which flow from a judgment are established by it as against a stranger, but these are never consequences which directly affect the substantial rights of such stranger, but only such as incidentally touch them. In an action to set aside a deed as fraudulent as to creditors of the grantor, a judgment against the grantor conclusively establishes the relation of creditor and debtor between the parties to the judgment, even as against the grantee in the action to set aside the transfer to him. 2 Black, Judgm. § 605. Whether the plaintiff is a creditor of the grantor only remotely affects the grantee. This fact gives him the status which will enable him to attack the conveyance if fraudulent, but the question still remains whether it is fraudulent, and that question the grantee has a right to insist shall be tried in the action against him; and, if the judgment in the action by the creditor against the grantor should attempt to settle it, that judgment would be ineffectual, to that extent, as against the grantee. If the legal consequences of a judgment, when pushed to their extreme logical position, will directly affect the rights of a stranger to the judgment, such judgment is not evidence against the stranger in that respect. No case can be found holding the contrary. See *Maloney* v. *Finnegan*, (Minn.) 41 N. W. 979, 980.

The judgment of the District Court is reversed, and a new trial is ordered. All concur.