Terry L. BARNES and Nancy L. Barnes,
Plaintiffs and Appellees

v.

MITZEL BUILDERS, INC., Defendant
and Appellant

and

Dan Cashman, d/b/a Cashman
Nursery, Defendant.

Civ. No. 940158.

Supreme Court of North Dakota.

Jan. 19, 1995.

James L. Norris, P.C. (argued), Bismarck, for plaintiffs and appellees. Appearance by Terry L. Barnes.

Dean F. Bard (argued), Bismarck, for defendant and appellant Mitzel Builders, Inc. Appearance by LeeRoy Mitzel.

MESCHKE, Justice.

Mitzel Builders appeals from an order of the trial court denying its post-trial motions for judgment as a matter of law and for a new trial. We affirm.

Mitzel Builders, a builder of homes, completed construction of a "speculation home" (not for a specific buyer) in Bismarck in early 1990. On August 3, 1990, Terry and Nancy Barnes bought the home.

The home was built according to the Bismarck City Building Code, with a perimeter drain tile system connected to a sump. A sump pump is not required under the Code, and none was installed. In August and September of 1990, the Barneses had Cashman Nursery landscape the yard. Next to the home, Cashman installed rock mulch on top of plastic sheeting with a rubber edging that protruded above the height of the rock layer. The Barneses added a concrete R.V. slab to park a recreational vehicle.

Small cracks appeared in the interior walls of the Barneses' home in the spring of 1991. Mitzel repaired them. The cracks reappeared, much worse, in the spring of 1992, along with new cracks. On inspecting the basement, LeeRoy Mitzel noticed that "[t]he cement floor was cracked at this time and some seepage was coming through the cracks," and "the sump was full of water and [I] suggested that Barneses obtain a pump and pump it out." Also, "the basement center bearing wall had risen because of a heave in the basement floor and the house was exhibiting distress." Mitzel did not repair the cracks, but did install extensions on several downspouts to divert precipitation away from the house. The Barneses installed a pump, and pumped the water out of the sump.

The Barneses hired experts in September of 1992 to perform tests around the foundation. The tests "show[ed] an average [backfill] compaction of only 74.5% and a moisture content averaging 6.7% over optimum." The basement floor "showed evidence of some movement." The floor had a "[n]oticeable unevenness" and was cracked, there was "substantial compression" on the interior partition, and there was cracking in other parts of the house. The experts concluded that there was "a relatively low degree of compaction," and that the backfill was "moderately permeable and would allow rapid infiltration of surface runoff from rainfall or other sources." In January of 1993, the resulting damage was estimated at $37,075.

The Barneses sued Mitzel in January of 1993, claiming breach of contract, breach of implied warranty, and negligence. Mitzel answered, alleging that Cashman's negligence contributed to the damage. The Barneses amended their complaint to add Cashman as a defendant. Before trial, Cashman settled with the Barneses. In January 1994, the case between the Barneses and Mitzel was tried before a jury.

At trial, the Barneses' geotechnical expert, Joel Zeltinger, testified that the perimeter backfill was improperly compacted to 70 to 82 percent, that the compaction should have been 90 to 95 percent, and that the cracks in the basement floor were caused "[b]y uplift of the expansive soil below the floor" and by "swelling of the soil underneath the house." Jens Traeholt, a structural engineer, testified that the heaving of the floor was due to "moisture getting into expansive soils underneath the slab," and that the backfill "needs to [be] replaced. Or recompacted." John Weekes, a city inspector for Bismarck, testified that, after corrections to the house were made, it had passed inspection, but that the backfill compaction was not checked by the city, and was left to the builder. Terry Barnes testified "that I had not touched anything because I was told not to" by Traeholt, and that no repairs had been done yet.

LeeRoy Mitzel blamed the problems on the landscaping changes. He also claimed that the R.V. slab altered the drainage around the house. Gary Arman, a professional engineer for Mitzel, testified that the bordered landscaping "create[s] a dam or

water reservoir that will hold moisture adjacent to the structure," that the R.V. slab installed by the Barneses "did not provide what I would consider good positive runoff away from the structure," and blamed the water problems on excessive sprinkling and insufficient drainage from the rock-mulch landscaping and R.V. slab. However, Arman admitted that the backfill compaction was "not up to what we would consider normal standards." Herb Ebel, part-owner of the excavating company that compacted the backfill for Mitzel, testified that it was done properly, but that he did not know the ratio of compaction.

The jury decided that Mitzel's negligence caused all the damages, that no negligence by Cashman contributed, and that the Barneses had not failed to minimize damages. The jury verdict awarded the Barneses damages, and a judgment totalling $30,400.90 was entered for them.

Mitzel moved for judgment as a matter of law and for a new trial. The trial court denied the motions, Mitzel appealed, and the Barneses cross-appealed. The Barneses withdrew their cross-appeal, and we decide only the questions raised in Mitzel's appeal.[1]

Mitzel argues that the trial court erred in denying its motions for judgment as a matter of law and for a new trial. Specifically, Mitzel claims that the jury verdict was contrary to the weight of the evidence, that contributory fault by the Barneses was so great that it bars recovery, and that several jury instructions were erroneous. We disagree.

■ A post-judgment motion for judgment as a matter of law is a motion for judgment notwithstanding the verdict. In reviewing a denial of that motion, as we

explained in *Hoovestol v. Security State Bank*, 479 N.W.2d 854, 861 (N.D.1992), citing *Okken v. Okken*, 325 N.W.2d 264, 267 (N.D. 1982), we employ the same rigorous standard as the trial court must, that is "whether or not the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but *one* conclusion as to the verdict about which there can be no reasonable difference of opinion." We have also explained the standard of review for a new trial:

> When the sufficiency of the evidence to support a jury verdict is challenged, we will not invade the province of the jury to weigh the evidence or to determine the credibility of witnesses. Our review of questions of fact is limited to consideration of whether there is substantial evidence to sustain the jury's verdict. In making that determination, we view the evidence in the light most favorable to the verdict.

*Construction Assoc., Inc. v. Fargo Water Equip. Co.*, 446 N.W.2d 237, 239 (N.D.1989) (citations omitted). As we wrote in *Usry v. Theusch*, 521 N.W.2d 918, 919 (N.D.1994), we do not reverse denial of a new trial unless the trial court abused its discretion.

■ At trial, there was evidence for both sides. "It is well-settled that the credibility of expert witnesses, and the weight to be given their testimony, are matters to be determined by the trier of fact." *Construction Assoc.* at 239. "The jury in this case made a choice between two permissible views of the weight of the evidence." *Id.* We conclude that the evidence supports this verdict and that Mitzel did not meet the greater burden for judgment as a matter of law.

To deny Mitzel's motions, the trial court reasoned that "[s]ome of the arguments advanced by movant proceed upon an assump-

1. The trial was limited to negligence, as the trial court held that an express one-year written warranty in the contract for the sale of the home, that required written notice, effectively disclaimed all other implied warranties. The trial court ruled the Barneses were not complaining about the way the house was built, but about the way the backfill was put in, and thus no breach of an implied warranty of fitness arose.

   In a proper case, an implied warranty of fitness may apply to the construction of a residential home. *See Powers v. Martinson*, 313 N.W.2d 720, 725 n. 1 (N.D.1981) (citing cases from other states); *Carlson Homes, Inc. v. Messmer*, 307 N.W.2d 564, 567 (N.D.1981) (claim of landscaping done in unworkmanlike manner outlined warranty theory); *Dobler v. Malloy*, 214 N.W.2d 510, 517 (N.D.1973) (enumerating factors for implied warranty of fitness in construction of new home). The Barneses cross-appealed, in part, to pursue the warranty claim. Since their cross-appeal has been withdrawn, we do not decide it.

tion of law with which I disagree," and that "[t]he remaining arguments deal with factual issues that were fully tried and argued to the jury, and I cannot say, as a matter of law, that the determination of these factual issues by the jury were not supported by the evidence or were against the greater weight of the evidence." We agree. The trial court did not abuse its discretion by denying the motions.

Mitzel argues that instructions to the jury were inadequate because they did not allow the jury to apportion damages between parties and non-parties. Mitzel claims that the trial court "started hinting to the jury that it might not be absolutely necessary for them to make a finding as to any negligence attributable to Cashman (or anyone else)." Mitzel wanted the instruction on the "Nature of Case" to state that "it *will* be necessary," rather than the court's wording that "it may still be necessary," for the jury to decide the negligence of Cashman. Additionally, Mitzel claims that the instructions on "Elements of Proof" improperly told the jury to decide Cashman's negligence only if Mitzel's negligence caused damages. Mitzel argues that the trial court should have used its requested instructions on "Burden of Proof," "Damages," and "Comparative Fault," since those versions referred to multiple defendants and required separate decisions about the fault of Mitzel and Cashman. Mitzel also challenges the "Special Verdict" form because it asked for a decision on Cashman's negligence only if the jury found Mitzel negligent.

■ Jury instructions must fairly inform the jury of the applicable law, but a trial court need not instruct in the exact language requested by a party. *Kunnanz v. Edge*, 515 N.W.2d 167, 175 (N.D.1994). We review whether, as a whole, the jury instructions fairly and adequately advised the jury. *Id.* at 175–76. Here, the instructions let the jury decide the negligence of both Mitzel and Cashman. Neither our rules of civil procedure, nor our statute on comparative fault direct any particular order of decision for special verdicts. *See* NDRCivP 49(a) on spe-

cial verdicts. The statute only requires the court to "direct the jury to find separate special verdicts determining the amount of damages and the percentage of fault attributable to each person, whether or not a party, who contributed to the injury." NDCC 32–03.2–02 (part). The jury was so instructed, and did so here. Mitzel's real complaint seems to be that the jury did not find Cashman negligent.

■ Mitzel had full opportunity to present evidence to the jury about Cashman's fault. The jury weighed the evidence and decided that the damage was due to Mitzel's negligence, not Cashman's, and thus decided the negligence of both. Nor was a separate decision necessary on the negligence of the excavating company for failure to compact the backfill. NDCC 32–03.2–02 (another part) directs that "any persons who act in concert in committing a tortious act . . . or ratifies or adopts the act for their benefit, are jointly liable for all damages attributable to their combined percentage of fault." The excavating company was hired by Mitzel to do the backfill work. Viewing the instructions as a whole, the instructions fairly and adequately advised the jury of the law, and the minor items argued by Mitzel do not necessitate reversal.

We see ample evidence, viewed in the light most favorable to the verdict, to justify this verdict. And we see no abuse of discretion by the trial court in denying the post-trial motions. We conclude the jury instructions were correct. Therefore, we affirm the verdict and the judgment.

VANDEWALLE, C.J., and LEVINE, NEUMANN, and SANDSTROM, JJ., concur.